IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CYNTHIA D. ROACH, | ) CIVIL ACTION 4:08-3770-TER |
| Plaintiff, | ) |
| v. | ) ORDER |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**I. PROCEDURAL HISTORY**

Plaintiff, Cynthia D. Roach, protectively filed an application for DIB on April 5, 2004 (Tr. 101), with an alleged onset of disability (AOD) of May 2, 2001, due to breast cancer, acid reflux, anxiety, back problems, and arthritis in her legs and hips (Tr. 167). Plaintiff requested a hearing before an administrative law judge (ALJ) after her claims were denied initially and on reconsideration. (Tr. 81-83). ALJ Ivar Avots conducted a hearing on September 18, 2007 (Tr. 43),

which was followed by a supplemental hearing on January 14, 2008 (Tr. 25), at which both plaintiff and a vocational expert (VE) appeared and testified.

On June 19, 2008, the ALJ issued a decision finding that plaintiff was not disabled because she could perform a limited range of unskilled light work that existed in significant numbers in the national economy. (Tr. 21). After the Appeals Council denied plaintiff's request for review (Tr. 5), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. Section 405(g). See 20 C.F.R. § 404.981.[1] Plaintiff filed the instant action on November 13, 2008.

## II. DISABILITY ANALYSIS

Plaintiff's "Brief" presents no separation of facts, questions or arguments; rather, the "Statement of the Case" apparently intermingles all three. It appears to the Court[2] that plaintiff proposes that the ALJ failed in:

(1) finding that plaintiff's statements were not credible to the extent they are inconsistent with the ALJ's residual functional capacity (RFC) finding;

(2) his assessment of plaintiff's carpal tunnel syndrome ("CTS");

(3) his conduct of step five of the sequential evaluation procedure;

(4) his evaluation of the opinion of plaintiff's consultative examiner.

The Commissioner contends that the ALJ did not commit these errors and urges that substantial evidence supports the determination that plaintiff was not disabled.

---

[1] All of this Court's references to the Code of Federal Regulations (C.F.R.) are to the 2008 edition.

[2] The court is not required "to conjure up questions never squarely presented to them. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

2

In deciding that plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2006 or later.

2. The claimant did not engage in substantial gainful activity during the period from her [AOD] of May 2, 2001 through her date last insured (20 CFR 404.1520(b) and 404.1571 *et seq.*). . . .

3. Through the date last insured, the claimant had the following severe combination of impairments: history of breast cancer, status post left mastectomy with breast reconstruction, depression, lymphedema, fibromyalgia, multi-level disc protrusions of the lumbar spine (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 an d404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that she has some limitation in the upper extremities, including no more than occasional pushing/pulling with the left upper extremity and only frequent overhead reaching involving the left shoulder. The claimant is also limited to no more than occasional climbing, balancing, stooping or crawling, and no more than frequent kneeling and crouching. Furthermore, the claimant is totally precluded from climbing ladders, ropes or scaffolds. In addition, the claimant is limited to unskilled work.

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

7. The claimant was born on March 28, 1959, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from May 2, 2001, the alleged onset date, through the date last insured (20 CFR 404.1520(g)).

(Tr. 15-22).

Plaintiff, born on March 28, 1959, was forty-two years old at her AOD, regulatorily defined as "a younger individual age 45-49." See id. (citing 20 C.F.R. § 404.1563). The ALJ found that plaintiff has at least a high school education and can communicate in English. He added that transferability of job skills was not an issue in the case. Based on these factors, plaintiff's RFC, and the testimony of the VE, the ALJ concluded that "the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 21). Accordingly, the ALJ decided that plaintiff was not under a disability, as defined in the Social Security Act (the Act), from her AOD through her DLI.

Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB,

305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent her from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## III. ARGUMENTS

A. Credibility

Plaintiff contends that the ALJ erred in his credibility assessment. Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but she must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at Craig's step one that plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. (Tr. 18). It is here that plaintiff has an issue, as a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment,

and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

The ALJ noted first that plaintiff's diagnostic tests did not support impairments that would be disabling. (Tr. 18). Plaintiff's AOD was May 2001, yet a whole-body scan in December 2004 showed only mild arthritic changes. (See Tr. 371). Her primary care physician found that she moved all extremities well and retained full strength. (See Tr. 357). Plaintiff's July 2005 magnetic resonance imaging ("MRI") of the lumbar spine revealed multi-level disc herniations that produced only a mild degree of canal stenosis and were deemed mild degenerative changes. (See Tr. 370).

Studies after plaintiff's date of last insured "DLI" did not indicate significant worsening. A lumbar spine MRI in February 2007 indicated a small disc protrusion at one level, a moderate protrusion at a second, and only a mild diffuse bulge at a third. (See Tr. 368). A physical examination in May 2007 – over a year after plaintiff's DLI, and *six years* from her AOD – was within normal limits except for a positive straight leg raise on the right. (See Tr. 399).

Additionally, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); see also Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" (citation omitted)). In this regard, the ALJ noted plaintiff's testimony that she can stand at least thirty minutes, can walk for less than thirty minutes, and could not lift five pounds. (Tr. 18). However, plaintiff admitted to her doctor that she had been lifting a twenty-five pound child into and out of a crib just six days after abdominal surgery. (Tr. 190, 198).

7

The ALJ further summarized plaintiff's array of activities. (Tr. 18-19). See Johnson, 434 F.3d at 658 (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). In applying for DIB, plaintiff said that she took care of her personal needs, performed the household chores, handled the household money, attended church often, and went out socially. (See Tr. 156-58). In August 2004, a couple of months post-mastectomy, plaintiff reported that she was caring for a foster child. (See Tr. 315). Plaintiff's primary care physician wrote in January 2006 that plaintiff had been working out at "Curves" three times per week. (See Tr. 347). Plaintiff told her psychiatrist in August 2006 that she had *five* foster children at home, including two teens and an infant![3] (See Tr. 397).

Plaintiff also complains of the ALJ's reliance on her part-time work[4] (see Tr. 18), but "working at a job while applying for benefits [is] inconsistent with complaints of disabling pain." Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (part-time work). See also Goff, 421 F.3d at 792 ("Working generally demonstrates an ability to perform a substantial gainful activity."); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) (finding it "not unreasonable" for the ALJ to note that claimant's daily activities, including part-time work, were "inconsistent with her claim of disabling pain"). A medical record from December 2004 noted plaintiff's work as a substitute

---

[3]The ALJ aptly observed that "the responsibility of providing care for young children at home can be quite demanding both physically and emotionally." (Tr. 19).

[4]In fact, several of plaintiff's pay stubs, submitted after the ALJ's hearing, indicate that she worked almost 70 hours in two weeks in April 2007, and averaged 27 hours per week in May, June and July 2007. (See Tr. 112-115). Additionally, plaintiff presented a pay stub from the local school district dated March 30, 2007 (Tr. 119), yet she testified in September 2007 that she had not been able to substitute "a couple of years maybe or a year" (Tr. 51).

teacher. (See Tr. 357). In January 2006, plaintiff reported that she worked as a substitute teacher. (Tr. 347). Plaintiff told her psychiatrist in 2007 that she was working at The Willows (as a medical technician, see Tr. 423, for 8-hour shifts, see Tr. 50) and was also "doing some private sitting." (Tr. 394). The ALJ properly noted that plaintiff's work "at an assisted care facility dispensing medication to individuals" and as a substitute teacher, "would ostensibly involve the ability to carry out instructions, perform activities within a schedule, attend to tasks from beginning to end, sustain a routine and make decisions," thus belying her allegations of problems with concentration and focus. (Tr. 19).

Lastly, the ALJ discussed plaintiff's noncompliance with recommended treatment, noting that "[f]ailure to follow prescribed treatment that would eliminate the disability is grounds for not finding the claimant to be disabled." (Tr. 19 (citing Tr. 20 C.F.R. § 404.1530(b)). See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure to, inter alia, sustain a consistent treatment regimen supported ALJ's credibility determination that plaintiff's pain complaints were inconsistent with the evidence). Plaintiff testified that she suffered from lymphedema in her left arm which results in hand and arm swelling, weakness and decreased grip, and the ALJ restricted her RFC accordingly. (Tr. 17; see also Tr. 54-56). She admitted, however, that she rarely used her wraps and sleeves. (Tr. 18 (citing Tr. 347)).

The ALJ additionally referred (Tr. 19) to plaintiff's several appointment cancellations and no-shows (see, e.g., Tr. 241, 277, 285, 295, 302, 311, 395).[5] During her 2004 physical therapy, plaintiff stopped attending due to a "job conflict." (See Tr. 299). Plaintiff was discharged from

---

[5]Of interest, although plaintiff gave an AOD of May 2, 2001, there are only 3 medical records for 2001, just 2 from all of 2002, and none between July 2002 and July 2003.

9

physical therapy in 2005 after she stopped attending. (See Tr. 275). Plaintiff saw her psychiatrist in August and September of 2006, but did not return until November, when she admitted that she had stopped taking her medication. (See Tr. 395). Cf. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled, they may not be considered disabling under the Act). To her credit, plaintiff had warned the doctor that, in the past, she had not been good at taking medications. (See Tr. 397). On the whole, the ALJ presented substantial evidence to support his credibility finding.

B. Carpal Tunnel Syndrome

Plaintiff claims that the ALJ failed to consider her diagnosis of carpal tunnel syndrome in formulating her RFC. However, the ALJ referred to plaintiff's testimony that she had occasional numbness in her right hand due to CTS. (Tr. 17). He also mentioned her "whole body scan" which failed to indicate physiological changes in her right upper extremity. (Tr. 18). The ALJ further discussed plaintiff's visit with Dr. Jeffrey Lawson in April 2005. (Id.; see also Tr. 390). Plaintiff complained to the doctor of stiffness and numbness in her right hand and arm, but only at night, and that she had difficulty holding objects, but only in the morning. Dr. Lawson, however, found that plaintiff had no edema; her neurological examination was intact to light touch and pinprick; and she had full strength. (Tr. 391). His diagnosis was of fibromyalgia, *not* of CTS. On her follow-up visit in May, plaintiff had no right hand complaints, and Dr. Lawson found that plaintiff had full range of motion without tenderness throughout her hands, wrists and elbows. (Tr. 390). In addition, she was able to make a full fist and had good grip strength. As to plaintiff's right hand, this record was repeated at her visits in June and October, 2005. (Tr. 387, 388).

Plaintiff's right hand complaints do not appear again in her medical records until May 2007, *after her DLI*, at which time she received advice to wear a wrist splint. (Tr. 398-99). Further, there is little indication in plaintiff's range of activities – including her work as a substitute teacher and a medication technician and in her role as a foster mother – that she is hampered by right hand symptoms. Accordingly, the ALJ did not err in failing to reflect right hand limitations in plaintiff's RFC.

C.  Step Five Finding

Plaintiff further argues that the ALJ erred in not including right hand limitations, in addition to others, in his hypothetical to the VE. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001);

Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

In finding that plaintiff can perform a limited range of "light"[6] work, the ALJ plainly rejected her alleged limitations in sitting, standing and walking. Yet, as discussed above, the ALJ presented substantial evidence to rebut these allegations. Further, two state agency consultants found that plaintiff could perform a limited range of light work (see Tr. 325-27; 333-35), and such consultants are "highly qualified . . . experts in Social Security disability evaluation" whose findings the ALJ must consider as opinion evidence, 20 C.F.R. § 404.1527(f)(2)(i). Consequently, the VE's response to the ALJ's properly formulated hypothetical satisfied the Commissioner's step five burden.

D.  Medical Opinion

Plaintiff posits that, as a result of her severe depression, she suffers from a marked limitation in her ability to respond appropriately to "work pressures in a usual work setting" and "changes in a routine work setting," as opined by psychologist Spurgeon Cole, Ph.D., in September 2006. (Tr. 323). Administration regulations require that all medical opinions in a case be considered. 20 C.F.R. § 404.1527(b). A "medical source" opinion, regardless of its giver, is evaluated

> pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005).

Johnson, 434 F.3d at 654 (footnote omitted).

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ..." 20 C.F.R. § 404.1567(b).

The ALJ did not incorporate Dr. Cole's findings into his RFC determination because he found them "not remotely consistent with the evidence of record." (Tr. 20). The ALJ explained:

> [T]he claimant has worked as a substitute teacher since her [AOD]. Dr. Cole also opined that the claimant is restricted in concentration. However, the undersigned notes that the claimant works at an assisted care facility dispensing medication to individuals. She has been trained and certified to do this and is relied on by others. Morever, Dr. Cole states that the claimant would have difficulty interacting with others. However, the claimant reported to Dr. Cole that she enjoys being around people. Just one month prior, the claimant reported having foster children at home, including a 14 year-old daughter, a 13 year-old daughter, a 12 year-old son, a 5 year-old son, and a 5 month-old son. In addition, Dr. Cole examined the claimant on only one occasion.

(Id.). The ALJ's assessment shows that he evaluated the doctor's opinion in accordance with the regulation and, thus, his determination is supported by substantial evidence. Hence, the ALJ did not err in not including Dr. Cole's suggested limitations in his RFC finding.

## IV. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

AND IT IS SO ORDERED.

                                                  s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

March 19, 2010
Florence, South Carolina